UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| IVY S., | |
| Plaintiff, | **DECISION and ORDER** |
| v. | |
| KILOLO KIJAKAZI,[1] Commissioner of Social Security, | 20-CV-981F (**consent**) |
| Defendant. | |

_____

APPEARANCES:   LAW OFFICES OF KENNETH R. HILLER, PLLC
Attorneys for Plaintiff
KENNETH R. HILLER, and
ANTHONY JOHN ROONEY, of Counsel
6000 North Bailey Avenue, Suite 1A
Amherst, New York  14226

TRINI E. ROSS
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York  14202
and
SERGEI ADEN
Special Assistant United States Attorney, of Counsel
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York  12078

**JURISDICTION**

On October 7, 2021, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned.  (Dkt. 18).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 9, 2021 (Dkt. 15), and by Defendant on August 31, 2021 (Dkt. 17).

## BACKGROUND

Plaintiff Ivy S. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA") on January 11, 2016, for Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits").  Plaintiff alleges she became disabled on April 11, 2015, based on ADHD, back issues with chronic pain since 2016 rendering Plaintiff unable to sit or stand for extended periods, knee problems since 2015 causing her knees to often "pop out of place," possible bilateral knee arthritis, mental health problems diagnosed as a child, depression, bipolar disorder, anxiety with panic attacks, and post-traumatic stress disorder ("PTSD") attributed to Plaintiff being abused as a child by her father.  AR[2] at 206, 218, 233, 237.  Plaintiff's application initially was denied on October 28, 2016, AR at 102-13, and at Plaintiff's timely request, AR at 114, 130-32, on October 18, 2018, an administrative hearing was held in Buffalo, New York before Administrative Law Judge ("ALJ") Mary Mattimore ("the ALJ"), AR at 31-76 ("first administrative hearing"), and continued on April 8, 2019, AR at 77-89 ("second administrative hearing") (together, "the hearings").  Appearing and testifying at the hearings were Plaintiff, then represented by Christopher Atkinson, Esq.,

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on February 5, 2021 (Dkt. 13).

with vocational expert Rachel Duchon ("the VE") also appearing and testifying at the second administrative hearing.

On April 24, 2019, the ALJ issued a decision denying Plaintiff's claims, AR at 9-30 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 202-05.  On May 29, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled through the date of the ALJ's Decision, AR at 1-6, thus rendering the ALJ's Decision the Commissioner's final decision.  On July 28, 2020, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On April 9, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 15) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 15-1) ("Plaintiff's Memorandum").  On August 31, 2021, Defendant moved for judgment on the pleadings (Dkt. 17) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 on Social Security Cases (Dkt. 17-1) ("Defendant's Memorandum").  Filed on October 12, 2021, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 19) ("Plaintiff's Reply"), advising Plaintiff "deems no reply necessary and relies on the original arguments and authority contained in her primary brief.  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Ivy S. ("Plaintiff"), born December 1, 1994, was 20 years old as of her alleged disability onset date ("DOD") of April 11, 2015, AR at 218, 233, and 24 years old as of April 24, 2019, the date of the ALJ's decision.  AR at 24.  Plaintiff lives in an apartment with her fiancé, her fiance's mother, brother, and brother's wife, as well as Plaintiff's youngest child.  AR at 42-43, 236, 247.  Plaintiff has two other children who do not live with her.  AR at 42.

Plaintiff attended high school in regular classes but with an individualized education program ("IEP") until ninth grade when Plaintiff dropped out of school because she was pregnant with her first child and needed to help her mother with the mother's four other children.  AR at 46, 50-51, 238.  Plaintiff has not completed any specialized job training or vocational school, but is attempting to obtain her graduate equivalency degree ("GED").  AR at 82, 238.

Plaintiff does not have a driver's license, never learned to drive and relies on public transportation or walks.  AR at 49, 249.  Plaintiff's only work history was a summer job picking cabbage on a farm for a couple of months before quitting because of knee and wrist pain.  AR at 51-52. Plaintiff describes her activities of daily living as caring for her 18-month old child of whom she has custody, light household chores, tending to personal care, watching television, reading to her son, dining out, going to movies, socializing with friends, attending church weekly, and shopping for groceries and clothes monthly.  AR at 42, 44, 49-50, 55-57, 248-51.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

It is undisputed that Plaintiff suffers from several mental health impairments requiring her to attend counseling sessions three times a week, as well as physical impairments including obesity, bilateral patellofemoral syndrome/chondromalacia patella (degenerative joint disease involving deterioration and softening of cartilage on the undersurface of the kneecap and pain between the kneecap and femur), carpal tunnel syndrome, and ulnar neuropathy.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). All five steps need

not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 11, 2016, the disability benefits application date, AR at 14, and suffers from the severe impairments of adjustment disorder with anxiety, bipolar disorder, PTSD, obesity, bilateral patellofemoral syndrome/chondromalacia patella, left carpal tunnel syndrome, right non-electrodiagnostic carpal tunnel syndrome, and bilateral ulnar neuropathy, *id*. at 15, but that other conditions alleged by Plaintiff are not severe impairments, including back pain for which the record contains no diagnostic or clinical evidence, insomnia which is not a separate impairment but a symptom of Plaintiff's mental impairments, and kidney stones, urinary tract infection, and migraine headaches, all of which were treated and resolved within 12 months or fewer and thus do not meet the durational requirement for disability under the Act, *id*., and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 15-17.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb stairs, occasionally push/pull bilaterally, never climb ladders, ropes and scaffolds, occasionally feel bilaterally, can frequently, as opposed to constantly, finger and handle bilaterally, cannot be exposed to temperature extremes, can perform low stress work (defined as simple, routine work),

and make simple workplace decisions not at a production rate pace (*e.g.*, assembly line), can maintain attention and concentration for two hour blocks of time, can tolerate occasional interaction with supervisors, coworkers, and the public, and cannot perform tandem or team work.  AR at 17-22.  The ALJ further found Plaintiff has no past relevant work ("PRW"), AR at 22, and that given Plaintiff's RFC, age, limited education, ability to communicate in English, with transferability of skills not relevant based on the lack of any PRW, Plaintiff was able to perform other work existing in the national economy in significant numbers including as a mail clerk, cleaner, shipping and receiving weigher, addresser, and document preparer.  AR at 22-24.  Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act from the application date since January 11, 2016, the date of Plaintiff's disability benefits application.  *Id*. at 24.

      Plaintiff's only challenge to the ALJ's findings is that the ALJ erred by failing to adequately address the impact of Plaintiff's treatment schedule on Plaintiff's work attendance and time on-task.  Plaintiff's Memorandum at 13-19.  Plaintiff particularly relies on an October 19, 2018 statement by Danielle Wilbur, M.D. ("Dr. Wilbur"), who treated Plaintiff's carpal tunnel syndrome, that Plaintiff would miss one or two days of work per month for treatment appointments, AR at 1101, and the October 12, 2018 statement by Plaintiff's Mental Health Counselor Kyli Day, MS ("Ms. Day"), that Plaintiff would miss at least four days of work per month because Plaintiff attended group therapy three days per month, and individual therapy every other week.  AR at 1057, 1061.  In opposition, Defendant argues the ALJ properly weighed the statement of Dr. Wilbur who does not qualify as a "treating physician" as defined under the Act, Defendant's Memorandum at 24-26, and that nothing in the record supports Ms. Day's

9

statement that mental health counseling appointments would cause Plaintiff to miss at least four days of work per week.  *Id*. at 26-30.

With regard to Dr. Wilbur's statement, because Plaintiff filed her disability benefits application prior to March 27, 2017, the application is subject to the so-called "treating physician's rule," which provides an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted).

In the instant case, Dr. Wilbur did not commence treating Plaintiff until September 25, 2018, when she evaluated Plaintiff in consultation for possible surgery.  AR at 1359-62.  In her statement made less than one month later on October 12, 2018, Dr. Wilbur explains that once or twice a month, Plaintiff would be absent from work for treatment of her bilateral carpal tunnel syndrome, and not because Plaintiff's condition itself was expected to interfere with or preclude Plaintiff from engaging in work.  AR at 1101.  Significantly, regardless of whether Dr. Wilbur's treatment of Plaintiff qualified Dr. Wilbur as Plaintiff's treating physician, in that same statement, Dr. Wilbur indicated Plaintiff has no significant restrictions with reaching, handling or fingering.  AR as 1103.

Nor does Dr. Wilbur explain how Plaintiff's attending treatment once or twice a week will necessarily prevent Plaintiff from working eight hours a day for five days a week.  *See Ann C. v. Comm'r of Soc. Sec.*, No. 18-CV-1291, 2021 WL 492113, at *5 (W.D.N.Y. Feb. 10, 2021) ("Plaintiff, however, fails to cite any evidence that her appointments would have required her to miss an entire day of work. As the Commissioner notes and other courts have recognized in rejecting similar arguments, it is possible that such appointments could have been completed during non-work hours.").  Accordingly, the ALJ did not err by failing to include in the RFC formulation Plaintiff's need to attend treatment for her carpal tunnel syndrome.

Similarly, for the same reason, the ALJ also did not err by failing to include in the RFC formulation Ms. Day's statement that Plaintiff would miss at least four days of work per month to attend mental health counseling.  Again, nothing in the record establishes Plaintiff's attendance at such counseling sessions would have to occur during work hours, which would not necessarily be Mondays through Fridays from 9:00 A.M. to 5:00 P.M.  It is significant that "this Court has found that the need for a medical visit does not necessarily equate to missing an entire day of work and that the need for multiple medical visits does not compel disabling absenteeism."  *Samantha R. v. Comm'r of Soc. Sec.*, 2021 WL 2820987, at * 5 (W.D.N.Y. July 7, 2021) (citing *Robbins v. Saul*, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) (rejecting plaintiff's assertion that 45 medical events over a 21-month period prevented her from maintaining regular employment and collecting cases finding that a claimant can seek treatment during part of a workday or during non-work hours)).  No does the record indicate that the duration of any treatment session Plaintiff attended would require Plaintiff to miss a full day of

work.  *Id*.  Accordingly, the ALJ did not err in failing to include a limitation for a fixed number of absences because the record does not support the need for such a limitation, and Plaintiff's argument to the contrary is pure speculation.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 15) is DENIED; Defendant's Motion (Dkt. 17) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	December 16th, 2021
	Buffalo, New York